UNITED STATES v. NORTON et al.

(Circuit Court of Appeals, Fifth Circuit. March 19, 1901.)

No. 1,000.

1. POSTMASTERS—MONEY ORDER FUNDS—WHAT CONSTITUTES.
Funds in other offices on which a postmaster could draw do not constitute money-order funds in his custody, within the meaning of the postal laws and regulations.

2. SAME—ACTION ON BONDS—PLEADING—AMENDED PETITIONS—NEW ACTION—LIMITATIONS.
The original petition in an action on a Texas postmaster's bonds counted on his nonpayment of moneys which actually came into his hands from money orders sold, fees thereon, etc., and subsequent amended petitions counted on moneys which a third person, not a regularly authorized assistant or clerk, had fraudulently acquired by filling out blank money orders, advice forms, etc., and causing them to be paid at other post offices, the fraud being alleged to be due to his either having allowed such unauthorized person access to his supplies, or to his having failed to comply with department regulations as to their custody. *Held* that, conceding that moneys thus fraudulently acquired by a third per-

son constituted funds in the postmaster's custody, within the meaning of the postal laws and regulations, the amended petitions stated a new and different cause of action not within the original lis pendens, and hence did not relate back to the commencement of the action pursuant to the Texas practice, and take the place of the original petition, so as to prevent limitations from running in favor of the sureties on the new cause of action alleged in the amendments.

3. EVIDENCE—EXCLUSION—HARMLESS ERROR.

A count in a petition against a postmaster's bondsmen alleged that he did not faithfully perform all the duties and obligations imposed on him and required of him by law by the rules and regulations of the department in connection with the money-order business, and had not paid moneys which came into his hands as postmaster. Thereunder certified copies of bonds, transcripts of the money orders of the department, and evidence of due demand for balances claimed as due were offered and admitted. Thereupon the government offered in evidence money orders signed, or purporting on their face to be signed, by him, on blanks furnished him, drawn on other postmasters, and paid to the payee named therein or to his assignee, and aggregating the amount of the shortage sued for. *Held*, that it was error to exclude such orders, but that it did not constitute ground for reversal, where it was conceded that proof to rebut the prima facie case established thereby was at the command of the sureties, to be offered if required.

4. PRIMA FACIE CASE—INSTRUCTING FOR DEFENDANTS—HARMLESS ERROR.

Judgment will not be reversed for error in instructing a finding for defendants, where the evidence established a prima facie case for plaintiff, it being conceded that evidence sufficient to rebut the same was at the command of defendants, to be offered if required.

In Error to the District Court of the United States for the Northern District of Texas.

On June 25, 1895, and on August 5, 1895, the plaintiff in error instituted three suits on the official bonds of Charles M. Norton, as former postmaster at Calvert, Tex., which suits were afterwards consolidated by order of court. The original petitions in these suits alleged, as a breach of the postmaster's bonds, that he had not paid all moneys coming into his hands as postmaster between 1891 and 1895 from postage collected, postage stamps sold, stamped envelopes sold, and from revenues derived from the rent of boxes, etc., and that he had retained the several sums sued for. On December 5, 1896, the plaintiff in error filed its first amended original petition, wherein it assigned, as a breach of the bonds, that the postmaster had not paid to the United States the balance of all moneys which came into his hands as postmaster in connection with the money-order business from February 7, 1891, to 1895, from money orders sold, fees thereon, and from other sources connected with the money-order business, and that he withheld the same; specifying the amounts so collected and coming into his hands. On April 10, 1899, the plaintiff in error filed its second amended petition, wherein it assigned, as breaches of the bonds: (1) That Norton had not paid over and accounted for certain sums of money which came into his hands as postmaster for money-order business from February 7, 1891, to 1895; (2) that Norton had not kept his money-order blanks, etc., under lock and key in a secure place to which unauthorized persons did not have access, by reason whereof certain sums of money specified were fraudulently appropriated, embezzled, and abstracted by one A. C. Love, who was not the deputy of Norton authorized to have access to said money-order blanks, but who was in the employ of Norton, had access to the blanks, and abstracted the same and other money orders, etc., to the amount named. On November 20, 1899, the plaintiff filed its third amended original petition in the consolidated cases, and assigned the following breaches of the bonds, to wit: (1) That between February 26, 1891, and March 30, 1895, from the money-order business, etc., Norton withheld $33.10, $1,454.98, and $1,108.50, moneys so collected or coming into his hands as postmaster; (2) that Norton, by his consent and authority, allowed A. C. Love, a clerk under him, to have access to the blank money orders, advice forms, etc.,

and to transact money-order business for him, pay money orders, sign Norton's name, etc.; and that Love, between February 7, 1891, and March 30, 1895, did abstract, embezzle, and fraudulently misapply and convert said sums of money, which sums came into Love's hands between said dates by reason of his filling up blank money orders and causing the same to be paid at other post offices. On April 23, 1900, the government filed its fourth amended original petition, which, in addition to the breaches assigned in the third amended original petition, added the third count, in which it assigned, as a breach of the bonds, that Norton did not keep his stock of money orders and advices in his own custody, under lock and key, in a secure place to which unauthorized persons did not have access, by reason of which failure A. C. Love, not the lawful money-order deputy, did fraudulently appropriate, embezzle, and abstract from the money-order funds of the United States the sum of $2,596.50, by abstracting and using post-office money orders, forms, etc., forging Norton's name, and drawing the money thereon from other post offices. The defendants in error, who are the sureties on the several bonds of the postmaster, Norton, by special demurrer and by plea set up the statute of limitations to the amended petitions of the plaintiff in error filed after 1896, on the ground that three years had elapsed from the final closing of Norton's accounts before the filing of these amended petitions, and that, therefore, as to the sureties, the claim of the government was barred. The trial court sustained the demurrers to the second and third counts in the fourth amended petition, upon which the case was tried. On the trial the government offered duly-certified copies of the bonds of the postmaster, and three certified transcripts from the auditor of the treasury of the post-office department, one dated June 14, 1895, the other two June 19, 1895, which showed balances due from the postmaster to the government in the amounts charged in the declaration. The plaintiff also offered in evidence money orders signed by the post-office department of the United States by the postmaster at Calvert, Tex., to wit, Charles M. Norton, and paid by the United States post-office department at post offices other than the Calvert post office. The aggregate amount of the sums so paid on such money orders was the amount sued for by the plaintiff in this consolidated action. The plaintiff also showed that these money orders had been taken from the Calvert post office by one A. C. Love, and by him filled up and signed, and cashed at post offices other than the Calvert post office. The court instructed the jury peremptorily to find in favor of the United States against C. M. Norton for the amount claimed, and to further find in favor of the defendants John H. Drennan, Rudolf Oscar, William Briggs, John T. Garrett, Emil Conitz, and Thomas B. Jones, sureties on the bonds of the postmaster.

Wm. H. Atwell, for plaintiff in error.
D. C. Colinger and Geo. Clark, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case, delivered the opinion of the court.

The filing of the original petition in 1895, and the certified transcripts of the postmaster's account showing the balance claimed in the petition, make it clear that the postmaster's accounts were settled, within the meaning of section 3838 of the Revised Statutes, in June, 1895, more than three years before the filing of the amendments which set up the breaches of the bonds as alleged in the second and third counts of the amendment on which the trial was had. According to the Texas practice, the amended petition takes the place of previous pleadings presented by the plaintiff, and what of earlier pleading is not reproduced in the amendment is abandoned. In this case the first count in the later amendments, and in that on which the trial was had, substantially carries forward the allegation of the

breach that was presented in the original petition; and it is claimed by the learned district attorney who represented the government on the trial in the district court and in this court that the second and third counts, as thereafter embodied in the amendments filed, were only expansions of the original charge, that the suit is on the same bonds, that it is for the same amounts of money due by the postmaster to the government, and that the matter introduced by the second and third counts is within the lis pendens as originally instituted, and therefore that those amendments relate back to the institution of the action, and exclude the operation of the statute of prescription. It may be true that the postmaster is liable for the amount claimed, whether it actually came into his hands as postmaster, or was lost to the government by his failure to comply with the regulations of the post-office department in reference to the custody of money-order blanks and letters of advice; but the statute of prescription applied in this case was not passed for the benefit of the postmaster, and has no application to him, but relates only to the sureties on his bond, by whom it is here interposed. The suit, as originally instituted against him and them, was for money that actually came into his hands from postage collected, etc. The suit sought to be enforced against him and the sureties, as shown clearly by the record, is for money that never came into his hands at all,—either into his hands individually, or into the hands of any authorized assistant or clerk whose actual custody was constructively his. The pleadings clearly import what the bill of exceptions says the plaintiff showed by proof,—that these money orders had been taken from the Calvert post office by one A. C. Love, and by him filled up and signed, and cashed at post offices other than the Calvert post office. The able district attorney suggests, with some hesitancy, that all the money-order funds upon which the Calvert postmaster could draw in any other offices, however numerous or wherever located, constitute money-order funds in his custody, within the meaning of the statutes and the regulations of the department. He admits that he cannot support this position by any adjudicated case; and an examination of the different provisions of the statutes and of the rules and regulations of the post-office department appear to us to forbid the acceptance of such a proposition. What constitute money-order funds in the hands of a named postmaster appear to be sufficiently defined and described to exclude the contention which the district attorney with hesitancy submits. Even if this contention were sound, it would not affect the question we are considering here, as to whether the second and third counts in the government's petition constitute, or are equivalent to, a new suit, to the extent that it introduces matter as against the sureties not within the original lis pendens, and which cannot be allowed such relation back to the allegation of the original petition as will exclude the operation of the statutes of limitations as to the matter pleaded in these counts. From a very careful consideration of the case of Governor v. Burnett, 27 Tex. 32, and the case of Railroad Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983, we are satisfied that the district court did not err in sustaining the demurrer of the defendants in error to the second and third

counts of the government's petition. It is true that the pleading of the plaintiff does not in express terms allege that the accounts of the postmaster were settled in June, 1895, or at any other given date; but the filing of the original petitions at the time they were filed, declaring on the balances due the government from the postmaster, as was done, and supported by the certified transcripts from the auditor's office, which possibly did not appear until the trial, render the counts really and practically as subject to demurrer on the ground of lapse of time as they are to the plea, which there was no disposition to dispute. Therefore, it is immaterial that the demurrer, as distinguished from the plea, was permitted to avail for the defendants' protection.

For the same reasons it appears equally clear that the court did not err in sustaining the objection of the defendants in error to the introduction of the postal laws and regulations relating to the care and custody of money-order blanks and applications. The second error assigned is founded on this action, and urges that there "was error for the reason that plaintiffs had showed that the shortages for which they sued had occurred by reason of blank money orders and advices which had been sent to Norton as postmaster at Calvert, Texas, being taken out of his possession in some way by one Love, who had filled same up and drawn funds from post offices in the United States other than the Calvert office. It having been shown that Love was not an unauthorized person." The last line in the above quotation finds no support in the proof admitted or offered as shown by the printed record.

The third error assigned is that "the court erred in sustaining the objection of defendant sureties to the introduction by plaintiffs of certain money orders which had been paid out of the money-order funds of the United States at post offices other than the Calvert post office, and which in the aggregate amount equaled the shortage sued for in this consolidated suit, which said money orders were upon the blank orders and advices previously furnished by the post-office department to Charles M. Norton, postmaster at Calvert, Tex., and which said blank orders and advices so sent to the Calvert office as aforesaid had been taken therefrom, and filled out in letters and figures upon other offices of the United States, and cashed thereat; the court admitting them in evidence only as to defendant Norton, and not as against his sureties. This was error, because he was charged to keep them safely." The trial court held that the first count in the plaintiff's fourth amended original petition was not obnoxious to the defendants' general demurrer. As the defendants took no cross writ of error, this ruling is not complained of here. This count being good as against all of the defendants, competent proof tending to support its allegations was admissible against all of them. The certified copies of the bonds, the three transcripts from the auditor of the treasury for the post-office department certified to be true and correct transcripts from the money-order account books of the post-office department, and evidence of due demand having been made of the postmaster for the balances claimed as due, had all been offered and admitted when the plaintiff offered in evidence the certain money or-

ders referred to in this assignment. The money-order blanks, including the applications for orders, the order itself, and the advice, are all made on prescribed forms duly furnished the postmaster of each money-order office, with such recorded statements thereof and reports thereon as enable the department to trace the same, and require the postmaster to account for all received by him. The law and the regulations and the uniform practice require that, before issuing a money order to an applicant, the postmaster, or his authorized assistant or clerk, shall receive in cash, in legal-tender money or national bank currency, the amount of the order and the fees for issuing the same, and the money so received thereby becomes money-order funds in the custody of the postmaster receiving it, either in person or by his authorized assistant or clerk. It is made a penal offense for the postmaster to deliver any such money order without first receiving the amount thereof, and the fees for the issuance thereof, in cash. It must, therefore, we think, be clear that the production of money orders, signed, or purporting on their face to be signed, by the postmaster, on blanks that had been furnished him, drawn on the postmasters of other offices, and paid by other offices to the payee named in the order or to his assignee, is evidence tending to prove the receipt into the custody of the postmaster of post-office money-order funds; and that this, with the other proof that had been offered and admitted, in the absence of any contradictory proof (none having been offered by the defendants), would show a primà facie case against all of the obligors in the postmaster's bonds sufficient to establish the charge in the first count,—that the postmaster did not faithfully discharge and perform all the duties and obligations imposed upon him and required of him by law and by the rules and regulations of said post-office department in connection with the money-order business of said post-office department, and had not paid the moneys which came into his hands as postmaster, as claimed in the first count. The action of the court in sustaining the objection to the introduction of this proof as against the sureties seems to us to have been erroneous. It is clear to us, however, from the whole record, as it must have been to the trial court, that, while there was offered no contradictory proof to rebut the prima facie case as stated above, such proof existed and was substantially conceded to be at the command of the defendant sureties, to be offered, if required, to amply show that the shortage for which the government sued had occurred by reason of blank money orders and advices which had been sent to Norton as postmaster at Calvert, Tex., being taken out of his possession in some way by one Love, who had filled same up and drawn funds from post offices in the United States other than the Calvert office, and that, in fact, no money therefor had been received by the postmaster, or by any duly-authorized assistant or clerk, if by any one, previous to the payment thereof to the payee named in the order. This third assignment of error, which we must think is well taken, is therefore "error without injury," and does not constitute ground for reversal.

In like manner, and for similar reasons, the fifth error assigned, namely, that the court erred in instructing the jury to find against

the plaintiffs as to their suit against the sureties of the defendant Charles M. Norton, is technically well taken, not on the grounds which the assignment suggests, but because, besides the money orders offered as evidence, and which were excluded as against the sureties, there was sufficient proof admitted to make a prima facie case such as would put the sureties, as well as the postmaster, on their defense. This error, however, like the one just disposed of, and on the grounds suggested in the consideration of that action of the court, is in like manner "error without injury." The judgment of the district court is affirmed.